IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVARTIS PHARMACEUTICALS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ALEXION PHARMACEUTICALS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Novartis Pharmaceuticals Corporation ("Plaintiff" or "Novartis") brings this action against Defendant Alexion Pharmaceuticals, Inc. ("Defendant" or "Alexion") and alleges as follows:

## NATURE OF THE CASE

1.  Alexion has launched a false and misleading marketing campaign that is unsupported by scientific evidence and wrongly suggests that its product, ULTOMIRIS® (ravulizumab), is superior in efficacy and safety to Novartis' FABHALTA® (iptacopan) for treating paroxysmal nocturnal hemoglobinuria ("PNH"). Novartis brings this action to seek redress for that campaign, which further implies that FABHALTA® may leave patients at risk for life-threatening consequences of PNH—a claim that is not only baseless, but is directly contradicted by clinical data. In fact, studies show the opposite: FABHALTA® is at least as effective as ULTOMIRIS® in treating PNH. Alexion's deceptive messaging misleads healthcare professionals, distorts prescribing decisions, and harms both Novartis and the patients who rely on accurate, evidence-based information.

2.  ULTOMIRIS® and FABHALTA® are both FDA-approved to treat PNH, a rare but chronic and life-threatening disease in which red blood cells are destroyed by the

complement system, which is part of the immune system.  PNH affects approximately 10–20 million people worldwide.  Iptacopan (Brand name: FABHALTA®) is the fruit of years of research by Novartis into how to comprehensively address complement-mediated diseases.  That research led to Novartis' discovery and development of FABHALTA®, a proximal complement inhibitor and the first oral monotherapy for treatment of adults with PNH.  FABHALTA® was approved by the FDA and commercially launched in December 2023.

3.      In early 2025, facing competition from a product that was gaining traction with prescribers, Alexion launched an advertising campaign that falsely implies ULTOMIRIS® is more effective than FABHALTA® at treating PNH.  Specifically, Alexion falsely claims that ULTOMIRIS® can "Block the Cause" of serious PNH consequences like intravascular hemolysis ("IVH") and thrombosis, while drugs like FABHALTA® cannot.  One such advertisement as shown on Alexion's website is below.  (*See* Ex. A.)



4.      Alexion's "Block the Cause" campaign targets proximal complement inhibitors like FABHALTA® by asserting that "proximal complement inhibition may not lead to complete terminal complement inhibition."  It then contends that "[a]ctivation of the terminal complement can lead to serious PNH consequences such as IVH or thromboembolic events."  The campaign aims to cast doubt on the effectiveness of FABHALTA® and its ability to prevent serious consequences, touting Alexion's ULTOMIRIS® as superior to Novartis' FABHALTA®.

5.      In fact, studies show the opposite.  A study comparing C5 inhibitors like ULTOMIRIS® to FABHALTA® shows that adults with PNH who switched to FABHALTA® had reduced need for red blood cell transfusions and achieved higher hemoglobin levels.  (*See* U.S. Food & Drug Admin., Ctr. For Drug Evaluation & Research, *Integrated Review for Fabhalta (iptacopan) Capsules*, at 52, 68 (Dec. 5, 2023), available at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2023/218276Orig1s000IntegratedR.pdf; *see also* Peffault de Latour, et al., *Oral Iptacopan Monotherapy in Paroxysmal Nocturnal Hemoglobinuria*, 390 New Engl. J. Med. 994, 1003 (2024), https://www.nejm.org/doi/full/10.1056/NEJMoa2308695.)   Studies also show that FABHALTA® is just as effective at controlling IVH as C5 inhibitors like ULTOMIRIS®.  (*See* U.S. Food & Drug Admin., Ctr. For Drug Evaluation & Research, *Integrated Review for Fabhalta (iptacopan) Capsules*, at 56; Peffault de Latour, et al., *Oral Iptacopan Monotherapy in Paroxysmal Nocturnal Hemoglobinuria*, at 1003.)  By asserting that ULTOMIRIS® "blocks the cause" of "life-threatening IVH and thrombosis," Alexion suggests that FABHALTA® is not only less effective, but even dangerous.

6.      Alexion has gone to great lengths to spread its false messaging.  Beyond its website, Alexion has verbally told healthcare professionals, including national experts in PNH,

that PNH cannot be controlled without inhibiting complement component C5.  In both sales calls and Alexion-sponsored symposia, Alexion has asserted that proximal complement inhibitors like FABHALTA® do not effectively block terminal complement activity and therefore are inferior to ULTOMIRIS® in treating PNH.  And Alexion has told prescribers that patients using proximal rather than terminal complement inhibitors face an increased risk of infection, again falsely suggesting that ULTOMIRIS® is superior to FABHALTA®.

7.      It is essential that healthcare professionals be able to rely on accurate and balanced promotional messaging to guide treatment choices.  Alexion's misrepresentation of ULTOMIRIS®'s superior efficacy through the "Block the Cause" campaign has materially influenced, and continues to influence, prescribing decisions without any scientific support, harming both patients and Novartis.  Novartis therefore brings this action pursuant to Section 43(a) of the Lanham Act and Delaware law to stop Alexion from misleading healthcare providers and the public.

## THE PARTIES

8.      Plaintiff Novartis is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at One Health Plaza, East Hanover, New Jersey 07936.

9.      Upon information and belief, Defendant Alexion is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 121 Seaport Boulevard, Boston, Massachusetts 02210.  Alexion Pharmaceuticals was acquired by AstraZeneca, a British-Swedish multinational pharmaceutical and biotechnology company headquartered in Cambridge, UK, in 2021.  Alexion is now the rare disease unit of AstraZeneca.

**JURISDICTION AND VENUE**

10.    This is an action for unfair competition and false advertising under the laws of the United States and arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., Delaware state law, and common law.

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Novartis' related state law claims and common law claims.

12.    Alexion is subject to personal jurisdiction in this judicial district because Alexion is incorporated in Delaware and because it regularly transacts business in this judicial district by, among other things, marketing and selling ULTOMIRIS® throughout the State of Delaware.

13.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Alexion is incorporated in and markets, sells, and distributes ULTOMIRIS® in this district. Alexion has submitted to venue in this district in at least *Chugai Pharmaceutical Co., Ltd. v. Alexion Pharmaceuticals, Inc.*, Nos. 1:18-cv-01802 and 1:19-cv-02120.  Alexion has current job openings in Wilmington, Delaware posted on its website, including positions related to hematology, and maintains an office at 1800 Concord Pike, Wilmington, DE 19850.

**FACTUAL BACKGROUND**

**A.    PAROXYSMAL NOCTURNAL HEMOGLOBINURIA ("PNH")**

14.    PNH is a clonal hematopoietic stem cell disorder caused by the somatic mutation of the PIG-A gene, leading to a deficiency in glycosylphosphatidylinositol-anchored proteins, including complement regulators.  In layman's terms, PNH is a rare blood disorder that occurs

5

when part of a person's immune system (the complement system) attacks and damages their red blood cells.

15. If left untreated, PNH can lead to a variety of conditions, including hemolytic anemia (an insufficient number of red blood cells circulating in the blood) and chronic kidney disease, along with consequences like IVH and thrombosis (blood clots). IVH is the predominant consequence of PNH and occurs when the immune system attacks and destroys red blood cells within the blood vessels, and the remains of the destroyed red blood cells circulate within the blood.

**B.     FABHALTA® AND ULTOMIRIS® ARE BOTH FDA-APPROVED TO TREAT PNH**

16. Both FABHALTA® and ULTOMIRIS® are designed to control terminal complement-mediated IVH—but they work in different ways.

17. There are three pathways that activate the complement system: classical, lectin, and alternative (in yellow below). These three pathways all result in activation of the C5b-9 membrane attack complex ("MAC") which destroys cells (see below):



18.     In patients with PNH, the alternative pathway is the main driver of the destruction of red blood cells.

19.     Novartis' drug, FABHALTA®, is a proximal complement inhibitor.  It targets the alternative pathway by inhibiting factor B and reducing the cleavage of C3 (in green above).  Because it targets an early stage of the alternative pathway, FABHALTA® aims to prevent the MAC from being formed, which prevents destruction of red blood cells.

20.     Alexion's drug, ULTOMIRIS®, is a terminal complement inhibitor.  It likewise works to stop the destruction of red blood cells but targets a different portion of the complement pathway—the complement component C5 (in blue above)—which functions near the bottom ("terminal" part) of the complement cascade.  ULTOMIRIS® blocks the downstream pathway of complement activation while leaving the upstream of the alternative complement pathway intact.

21.     Both FABHALTA® and ULTOMIRIS® are FDA-approved as standalone therapies for treating PNH.  Following the approval of FABHALTA®, doctors have called it a "new frontier" in PNH management and praised its "superior efficacy . . . compared to anti-C5 treatments [like ULTOMIRIS®]," as demonstrated in Phase III clinical trials.  (Bo Xu, et al., *Factor B Inhibitor Iptacopan for the Treatment of Paroxysmal Nocturnal Hemoglobinuria*, 66 Blood Revs. 101210 (2024).)

22.     Randomized controlled trials—the gold standard for evidence in biomedical research—support that FABHALTA® is at least as efficacious as ULTOMIRIS®.  One such study, APPLY, was a 24-week active comparator-controlled, randomized, open-label Phase III clinical trial of adults with PNH that was designed to study patients who switched to FABHALTA® or continued on one of Alexion's C5 inhibitors, including ULTOMIRIS®.  (*See* U.S. Food & Drug Admin., Ctr. For Drug Evaluation & Research, *Integrated Review for Fabhalta (iptacopan) Capsules*, at 31.)  All patients in the study had residual anemia (hemoglobin < 10 g/dL) despite previous treatment with a stable regimen of C5 inhibitor. Results were compared between 62 adults taking 200 mg of FABHALTA® twice daily and 35 adults who remained on a C5 inhibitor, 12 of whom were on ULTOMIRIS®, for a 24-week period.  This study found that FABHALTA® was superior to C5 inhibitors like ULTOMIRIS® in controlling hemolysis, the key clinical finding of PNH.

23.     In the 24-week APPLY study, an increase of hemoglobin (Hb) was reported in 82% of the patients who switched from a C5 inhibitor to FABHALTA® (defined as a hemoglobin increase of $\geq 2$ g/dL), compared to 0% of patients who remained on a C5 inhibitor like ULTOMIRIS®.  The APPLY study also found that approximately 68% of patients with PNH taking FABHALTA® achieved normalized hemoglobin levels of $\geq 12$ g/dL without the need for red blood cell transfusions, whereas 0% of patients taking C5 inhibitors like ULTOMIRIS® achieved the same result.  Consistent with these findings, APPLY showed that FABHALTA® reduced the absolute reticulocyte count ("ARC")—well-established in the scientific community as one of the crucial biomarkers of extravascular hemolytic activity ("EVH").  EVH, a process where red blood cells are destroyed outside of the bloodstream, primarily in the spleen, liver, and bone marrow, is believed to be caused by C5 inhibition due to C3b deposition on red blood cells.

24.     The APPLY study also found that there was no statistically significant difference between FABHALTA® and C5 inhibitors like ULTOMIRIS® for lactate dehydrogenase ("LDH"), another biomarker of hemolytic activity reflecting IVH.  Accordingly, the APPLY study found that FABHALTA® outperformed ULTOMIRIS® in several key areas (increased hemoglobin levels and reduced the need for red blood cell transfusions) and otherwise was just as effective as ULTOMIRIS®.  APPLY is particularly notable because it focused on a pre-treated population for whom the previous standard of care (C5 inhibition with drugs like ULTOMIRIS®) had failed to correct their anemia.  Even in this group of treatment-resistant patients, FABHALTA® was able to cause significant improvement in anemia due to hemolysis, and other consequences of PNH.

25.     Other studies have confirmed FABHALTA®'s efficacy.  APPOINT was a Phase III, open-label study evaluating FABHALTA® in 40 adults with PNH who had never been treated with a complement inhibitor before.  (*See* U.S. Food & Drug Admin., Ctr. For Drug Evaluation & Research, *Integrated Review for Fabhalta (iptacopan) Capsules*, at 56.)  The APPOINT study showed that patients treated with FABHALTA® likewise had reduced ARC and LDH measurements (indicating control of hemolytic activity), and a majority of patients had increased hemoglobin levels even without the need for red blood cell transfusions.  Finally, no patients being treated with FABHALTA® in the APPOINT trial had any breakthrough hemolysis or major adverse vascular events.

26.     APPULSE was another 24-week, open-label Phase III clinical study that evaluated whether it is safe and effective to switch clinically stable PNH patients from a C5 inhibitor to FABHALTA®.  The study found that patients who switched to FABHALTA® experienced significant improvements in their anemia due to hemolysis compared to what was achieved with C5 inhibition.  Patients also experienced clinically meaningful improvements in fatigue (as measured by FACIT-Fatigue score) after switching to FABHALTA®.  Additionally, patients on FABHALTA® maintained IVH and EVH control (demonstrated by low levels of LDH and ARC), and no patients required transfusions, experienced breakthrough hemolysis ("BTH"), or had any major adverse vascular events.

## C.     ALEXION'S FALSE AND MISLEADING "BLOCK THE CAUSE" CAMPAIGN

27.     Since at least March 2025, Alexion has created and distributed promotional materials for ULTOMIRIS®, including on Alexion's website and through sales calls and at symposia, that are false and misleading and distort the clinical landscape of available treatments for PNH.  Specifically, Alexion's "Block the Cause" campaign falsely suggests that ULTOMIRIS® is superior to proximal complement inhibitors like Novartis' FABHALTA®.

Below is an image from Alexion's "Block the Cause" campaign, which is also incorporated as Exhibit A:



28.    Alexion's "Block the Cause" advertisement prominently states at the top, in large green font, that "proximal complement inhibition may not lead to complete terminal complement inhibition," whereas, in contrast, ULTOMIRIS® "block[s] the cause" and "delivers immediate and complete C5 inhibition." The ad later repeats that ULTOMIRIS® "[a]chieve[s] long-term and complete C5 inhibition." The ad also states that "[t]he terminal complement can still be activated downstream, including at C5, even if the proximal system is completely blocked." The campaign notes that ULTOMIRIS® targets this "uncontrolled terminal complement activity."

**1.    The "Block the Cause" Campaign Clearly Presents a Superiority Claim**

29.     The "Block the Cause" campaign is designed to suggest that ULTOMIRIS® is superior to proximal complement inhibitors, like Novartis' FABHALTA®.

30.     The prominence of the large, boldface "Block the Cause" language, coupled with statements in the advertisement such as "C5 activation in PNH is associated with thrombosis, morbidity, and early mortality" and "ULTOMIRIS® delivers immediate and complete C5 inhibition," implies that ULTOMIRIS® is able to "block the cause" of consequences like IVH and thrombosis, whereas FABHALTA® cannot.

31.     Moreover, the "Block the Cause" campaign sets up a comparison between proximal inhibitors, like FABHALTA®, and terminal inhibitors, like ULTOMIRIS®, and states that "proximal complement inhibition may not lead to complete terminal complement inhibition," implying that ULTOMIRIS® is more effective than FABHALTA®.  A health professional reading Alexion's "Block the Cause" campaign would expect that only ULTOMIRIS®, and not FABHALTA®, could completely block the complement system.  Thus, the "Block the Cause" campaign suggests that only ULTOMIRIS® effectively treats PNH, and FABHALTA® does not.

32.     In addition, the "Block the Cause" campaign propagates a dangerous superiority message in suggesting that FABHALTA® is less effective than ULTOMIRIS® because "the terminal complement can still be activated downstream, including at C5, even if the proximal system is completely blocked.  Activation of the terminal complement can lead to serious PNH consequences such as IVH or thromboembolic events."

33.     On information and belief, Alexion has also verbally told healthcare professionals, including national experts in PNH, that without blocking C5, PNH cannot be controlled.

34. Alexion's false and misleading messaging goes beyond merely comparing the effectiveness of ULTOMIRIS® and FABHALTA® and provides the misleading impression that FABHALTA® is somehow dangerous. The placement of the claim about proximal inhibition near warnings about IVH and thrombosis, coupled with the prominence of the "Block the Cause" language, suggests that proximal inhibitors like FABHALTA® are unsafe or inadequate. A healthcare professional reading the "Block the Cause" campaign would be led to believe that FABHALTA® can lead to C5 activation, which could then cause thrombosis, morbidity, and early mortality.

35. On information and belief, Alexion has also verbally told healthcare professionals that there is an increased risk of infection in patients using proximal rather than terminal complement inhibitors, again suggesting that ULTOMIRIS® is superior to FABHALTA®.

**2.  Alexion's Superiority Claim Is False and Misleading**

36. Alexion has made, and continues to make, false and misleading statements about ULTOMIRIS®. The false and misleading statements were made in interstate commerce, and Novartis has suffered and will continue to suffer as a result of Alexion's false advertising and unfair competition.

37. Alexion's "Block the Cause" campaign is false and misleading for a variety of reasons.

38. The claim that "proximal complement inhibition may not lead to complete terminal complement inhibition" is deceptive in itself. The APPLY study found that Factor B inhibition by FABHALTA® blocks not just proximal complement activation but also inhibits downstream terminal complement activation just as well as C5 inhibitors including ULTOMIRIS®. Based on the APPLY and APPOINT studies, FDA approved FABHALTA® as a stand-alone therapy to treat PNH in December 2023. In FDA's integrated review for

13

FABHALTA® and in Section 12.1 of the USPI, FDA explicitly stated that FABHALTA® "acts proximally in the alternative pathway of the complement cascade *to control* both C3b-mediated EVH and *terminal complement-mediated* IVH." Accordingly, Alexion's claim that FABHALTA® "may not lead to complete terminal complement inhibition" contradicts the relevant studies and FDA's findings.

39.    The "proximal complement inhibition" claim becomes even more deceptive in the context of Alexion's claim that "[t]he terminal complement can still be activated downstream, including at C5, even if the proximal system is completely blocked. Activation of the terminal complement can lead to serious PNH consequences. . . ." These assertions imply that proximal inhibition does not adequately control IVH and can even lead to thrombotic events or death. This implied superiority claim lacks any evidentiary support.

40.    Alexion's suggestion that ULTOMIRIS® "block[s] the cause" of conditions like hemolysis is likewise false. Unlike FABHALTA®, C5 inhibitors like ULTOMIRIS® do not regulate C3, leading to C3b deposition on surviving PNH red blood cells, which may lead to EVH.

41.    Alexion's "Block the Cause" campaign claims that ULTOMIRIS® delivers "complete C5 inhibition," yet its own studies cited in the ad campaign demonstrate that some patients on ULTOMIRIS® still experience BTH and thrombosis. *See* Alexion Pharms., Inc., Protocol ALXN1210-PNH-301: A Phase 3, Randomized, Open-Label, Active-Controlled Study of ALXN1210 Versus Eculizumab in Complement Inhibitor–Naive Adult Patients with Paroxysmal Nocturnal Hemoglobinuria (PNH), Amendment 6 (Apr. 12, 2021); Alexion Pharms., Inc. Protocol ALXN1210-PNH-302: A Phase 3, Randomized, Open-Label, Active-Controlled Study of ALXN1210 Versus Eculizumab in Adult Patients with Paroxysmal Nocturnal

Hemoglobinuria (PNH) Currently Treated with Eculizumab, Amendment 2, (Mar. 1, 2019).

Alexion's claim that ULTOMIRIS® completely blocks the terminal complement is therefore at

least misleading, if not false.

42.     Alexion's continued use of its false and misleading "Block the Cause" campaign

is willful.  On March 17, 2025, Novartis sent a letter notifying Alexion of the false and

misleading nature of the ULTOMIRIS® "Block the Cause" campaign, warning of the significant

public health concerns posed by the campaign and requesting immediate corrective action to

remove the claims from all advertising materials.  On April 17, 2025, Alexion doubled down on

its claim of superiority in its response letter, asserting that proximal complement inhibitors

"primarily address upstream complement activity and may not fully manage the risks associated

with terminal complement activation."  Novartis replied on May 5, 2025, once again explaining

that Alexion's advertising campaign misrepresents the effectiveness of proximal complement

inhibitors to the public and healthcare professionals.  Rather than addressing the

misrepresentations in its marketing campaign, Alexion has refused to make meaningful changes

to the "Block the Cause" campaign.

### 3.     The Studies That Alexion Cites Do Not Show That ULTOMIRIS® Is More Effective Than FABHALTA®

43.     Alexion cites various references in the "Block the Cause" campaign.  *See* Ex. A.

But the studies that Alexion cites in the "Block the Cause" campaign and in its letters to Novartis

do *not* support that ULTOMIRIS® is more effective at treating PNH than FABHALTA®.

44.     For example, several of the studies were published in 2018, *before* proximal

complement inhibitors like FABHALTA® were on the market.  Others do not involve a

comparison between proximal and terminal complement inhibition or do not involve proximal

complement inhibitors at all.

45.     Alexion cites various articles and studies that discuss activation of the terminal complement, but none of them state that this activation can occur "even if the proximal system is completely blocked."  Additionally, the report that Alexion cites to support that "ULTOMIRIS® delivers immediate and complete C5 inhibition" explains that 4% of patients taking ULTOMIRIS® experienced breakthrough hemolysis, approximately 30% required transfusion, and less than half achieved LDH normalization.  (Hubert Schrezenmeier, et al., *One-Year Efficacy and Safety of Ravulizumab in Adults with Paroxysmal Nocturnal Hemoglobinuria Naïve to Complement Inhibitor Therapy: Open-Label Extension of a Randomized Study*, 11 Ther. Advs. Hematology 1, 3 (2020).)

46.     Despite Alexion's claims, there are no clinical data to suggest that patients taking FABHALTA® experience increased IVH due to incomplete terminal inhibition compared to patients taking a C5 inhibitor.  Current research supports the opposite: that FABHALTA® is just as effective as ULTOMIRIS® in controlling IVH.

**D.     THE ULTOMIRIS® CAMPAIGN HAS MATERIALLY MISLED HEALTHCARE PROVIDERS AND INJURED NOVARTIS**

47.     Novartis' FABHALTA® and Alexion's ULTOMIRIS® are direct competitors in the market for treating PNH.

48.     The "Block the Cause" website is made for and targets healthcare professionals. However, the website is not restricted to healthcare professionals, and patients can access it by simply clicking "OK."



49.     Additionally, on information and belief, Alexion disseminated false and misleading information on sales calls to healthcare providers as part of the "Block the Cause" campaign.  On these sales calls in April and May 2025, 40% and 60%, respectively, of healthcare professionals reported that they were told that proximal complement inhibition may not lead to complete terminal complement inhibition.  Additionally, at a symposium fully funded and organized by Alexion, presenters misled healthcare professionals by telling them that "[w]ith incomplete proximal inhibition, there is a probability for an exponential relationship between C3 molecules escaping inhibition and MAC complexes formed, and potential massive intravascular BTH."  Because healthcare providers rely on sales information and professional presentations when making prescribing decisions, and Alexion has promoted ULTOMIRIS® in a false and misleading manner, Alexion has deceived healthcare professionals into believing that

ULTOMIRIS® was superior to FABHALTA® in effectively blocking terminal complement activity.

50.     Various comments from healthcare professionals show that they have been misled into believing that only ULTOMIRIS® effectively blocks terminal complement activity and is therefore more effective than FABHALTA®.  For example, on information and belief, some medical experts have stated that they have concerns about the potential for breakthrough hemolysis due to incomplete inhibition of the terminal pathway when compared to C5 inhibitors, like ULTOMIRIS®.  Other experts have expressed that IVH and thrombosis are both driven by the terminal pathway, and without complete terminal pathway inhibition with a C5 inhibitor, patients are at risk for a serious health event.  Additionally, at an advisory board hearing, at least one doctor questioned whether the terminal complement activity for FABHALTA® was similar to C5 blockage.

51.     The "Block the Cause" campaign has also misled medical professionals to think that ULTOMIRIS® is superior because the C5 complement component is downstream of multiple complement system pathways, which are not all drivers of PNH.  On information and belief, Alexion has told medical experts that ULTOMIRIS® is superior because it blocks multiple complement pathways and therefore is like "flying with two engines instead of one."  Alexion's insinuation that ULTOMIRIS® is a more potent treatment or that it provides superior protection against PNH symptoms has no evidentiary support and is false and misleading.

52.     Alexion's "Block the Cause" campaign for ULTOMIRIS® has led healthcare providers and purchasers to believe that ULTOMIRIS® is superior to FABHALTA® at preventing IVH and thromboembolic events and therefore has affected their prescribing and purchasing decisions.  Prescribers rely on accurate and balanced promotional materials to

understand mechanistic differences and clinical implications of various medications, and Alexion's "Block the Cause" campaign disseminates false and misleading promotional materials to these prescribers and creates confusion within the healthcare community.  Alexion's misrepresentations and falsehoods deter healthcare providers from considering alternative therapies, like FABHALTA®, that are proven to address the residual complement activity such as EVH that ULTOMIRIS® does not address, and which remains a clinical challenge in PNH treatment.  This can result in limiting patients' access to FABHALTA®, an innovative and effective FDA-approved therapy, and lead to suboptimal patient care.

53.    Alexion's "Block the Cause" campaign intentionally introduces scientific misinformation into the medical community, thereby undermining the FDA's mandate to pharmaceutical companies that promotional materials must be truthful and non-misleading.

54.    Alexion's false and misleading "Block the Cause" advertising has caused and will continue to cause Novartis irreparable injury.  Novartis has spent millions on research and development related to FABHALTA®.  Unless and until Alexion is ordered to cease making its false and misleading claims and issue corrective advertising, Novartis stands to suffer a loss of its hard-earned sales, goodwill, and consumer confidence that it may never be able to recoup. Indeed, Novartis' business, sales, reputation, and goodwill have already been damaged by Alexion's "Block the Cause" campaign.  Since Alexion's false and misleading advertising began, Novartis has seen a decrease in revenue stemming from sales of FABHALTA® and a decrease in the number of patients switching from drugs like ULTOMIRIS® to FABHALTA®.

55.    Moreover, Alexion's false and misleading ULTOMIRIS® advertising also poses the risk of negatively impacting patients with PNH.  Clinical studies show that proximal complement inhibitors like Novartis' FABHALTA® are as effective as terminal complement

inhibitors like ULTOMIRIS® in managing IVH. FABHALTA® also controls EVH which is not addressed by ULTOMIRIS® in PNH. Furthermore, as the first oral therapy for PNH, FABHALTA® provides PNH patients with the option to avoid infusion therapies or subcutaneous injections. However, Alexion's "Block the Cause" advertising misleads patients and healthcare professionals about the comparative effectiveness of available therapies, undoing years of effort by Novartis to create this effective and convenient treatment option for patients. If Alexion's false advertising is not stopped, consumers and healthcare professionals will continue to take away the false message that ULTOMIRIS® is a more effective treatment for PNH, robbing the public of the benefits of proximal complement inhibitors and the option of managing PNH via oral capsules.

### COUNT I
### Violation of § 43(a) of the Lanham Act

56.     Novartis incorporates by reference the preceding paragraphs as though fully set forth herein.

57.     Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides in relevant part that "any person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

20

58.    Novartis and Alexion both make treatments for PNH.  Alexion's statements in marketing ULTOMIRIS® to the public (set forth in detail in the above paragraphs, attached as Exhibit A, and incorporated by reference herein) violate the Lanham Act because they are literally and/or impliedly false, misleading, and likely to cause confusion.  Alexion's false and misleading commercial statements actually deceive and have the tendency to deceive a substantial segment of the intended audience, who are healthcare professionals.  The false and/or misleading statements include the following, taken individually and together:

"Block the Cause.  Proximal complement inhibition may not lead to complete terminal complement inhibition.  The terminal complement can still be activated downstream, including at C5, even if the proximal system is completely blocked.  Activation of the terminal complement can lead to serious PNH consequences such as IVH or thromboembolic events."

These statements, alone and in combination with language like "C5 activation in PNH is associated with thrombosis, morbidity, and early mortality"; "ULTOMIRIS® targets uncontrolled terminal complement activity—the cause of life-threatening IVH and thrombosis"; "ULTOMIRIS® delivers immediate and complete C5 inhibition"; and "Achieve long-term and complete C5 inhibition" are false and misleading.

59.    The deception created from Defendant's false and misleading statements is material, in that it is likely to influence prescribing and purchasing decisions of Novartis' current and prospective customers, impacting healthcare providers and patients.

60.    By disseminating the "Block the Cause" campaign, including via Alexion's website and through its sales representatives, Alexion has caused its false statements to enter interstate commerce.

61.     Alexion's false and misleading claims are likely to deceive or confuse a substantial segment of healthcare professionals and, in fact, have actually deceived or confused a substantial segment of relevant healthcare professionals into believing that Alexion's ULTOMIRIS® is superior to Novartis' FABHALTA®.  Upon information and belief, these actions have caused harm to the general public by impacting patients' treatment decisions and, unless restrained, will further damage the public.

62.     As a direct and proximate result of Alexion's conduct, Novartis has suffered and will continue to suffer injury in fact and harm to its business, sales, reputation, and goodwill, entitling Novartis to damages in an amount to be determined at trial.  Specifically, Novartis has been or is likely to be injured by Alexion's false statements by direct diversion of sales from Novartis to Alexion, loss of market share, revenue, and profits, and a lessening of goodwill associated with Novartis and its FABHALTA® medication.  Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Alexion's violations of the Lanham Act, including the cost of corrective advertising needed to counter Alexion's false and misleading advertising; an accounting of profits made by Alexion on sales of ULTOMIRIS®; and recovery of Plaintiff's costs and reasonable attorneys' fees incurred in this action.

63.     Upon information and belief, Alexion knows, reasonably should know, or failed to investigate so as not to know, that its statements are false, misleading or deceptive.  Alexion's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees incurred in this action, pursuant to 15 U.S.C. § 1117.

64.     Alexion's conduct has caused, and will continue to cause, immediate and irreparable harm to Novartis for which there is no adequate remedy at law.  Unless enjoined by

this Court, Alexion's acts will irreparably harm and damage Novartis' reputation and goodwill and erode Novartis' market share.

65.     By reason of the foregoing, Novartis is entitled to injunctive relief as well as actual damages, treble damages, disgorgement of Alexion's profits, the costs of this action, and attorney's fees pursuant to 15 U.S.C. § 1117, as well as all other available remedies as set forth in its Prayer for Relief.

**COUNT II**
**<u>Deceptive Trade Practices Under 6 Del. C. § 2532</u>**
**<u>(Delaware Deceptive Trade Practices Act)</u>**

66.     Novartis repeats and incorporates by reference the preceding paragraphs as though fully set forth herein, including, without limitation, the specific allegations of Count I above.

67.     6 Del. C. § 2532 provides, in part: "(a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact."  6 Del. C. § 2533 provides a private right of action to enforce the provisions of 6 Del C. § 2532.

68.     Alexion's commercial advertising and promotional claims, as described herein, violate 6 Del. C. § 2532, because Novartis has engaged in deceptive trade practices by making false and misleading representations as to Alexion's ULTOMIRIS® and Novartis' FABHALTA®.  Alexion's actions and misrepresentations, individually or taken together, are likely to cause confusion, deception, or misunderstanding, and have caused confusion, deception, and misunderstanding, and constitute violations of, *inter alia*, 6 Del. C. §§ 2532(a)(5), (a)(7), (a)(8), and (a)(12).

69.     Alexion's ULTOMIRIS® is a direct competitor of Novartis' FABHALTA® product in the market for PNH treatments.

23

70.     Alexion knew or should have known that its conduct described above constituted unfair and deceptive trade practices that are prohibited by 6 Del. C. § 2532.  Alexion intended or reasonably should have recognized that those statements will result in harm to Novartis.

71.     The deception created from Alexion's false statements is material, in that it is likely to influence the prescribing decisions of doctors treating patients with PNH and the purchasing decisions of Novartis' current and prospective customers.

72.     As a result of Alexion's conduct, Novartis has suffered and will continue to suffer harm to its business, sales, reputation, and goodwill, entitling Novartis to damages for Alexion's unfair and deceptive trade practices described above.  Specifically, Novartis has been or is likely to be injured by Alexion's false statements by direct diversion of sales from Novartis to Alexion and a lessening of goodwill associated with Novartis and its FABHALTA® medication.

73.     For the reasons set forth above, Novartis is entitled to recover damages sustained by Novartis in an amount to be determined at trial, which damages may be trebled pursuant to 6 Del. C. § 2533(c).

74.     Novartis is entitled to an injunction pursuant to 6 Del. C. § 2533(a) prohibiting further acts of unfair competition, because unless Alexion is permanently enjoined, Novartis will continue to suffer immediate and irreparable harm to its reputation, market share, and goodwill, for which there is no adequate remedy at law.

75.     Novartis is entitled to attorneys' fees pursuant to 6 Del. C. § 2533(b) because Alexion has willfully engaged in a deceptive trade practice.

**COUNT III**
**Delaware Common Law Unfair Competition**

76.     Plaintiff repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

77.    The conduct described above and throughout this Complaint constitutes unfair competition, unfair sales practices, and deceptive trade practices under the common law of the State of Delaware.

78.    Alexion's commercial advertising and promotional claims, as described above, are intentionally false and misleading statements of fact that misrepresent the nature, characteristics, and qualities of Alexion's ULTOMIRIS® and Novartis' FABHALTA®, and both deceive and have the capacity to deceive a substantial segment of relevant prescribing physicians, consumers, and potential consumers for the parties' PNH treatment products.

79.    The deception created from Alexion's false statements is material, in that it is likely to influence the prescribing decisions of doctors treating patients with PNH and the purchasing decisions of Novartis' current and prospective patients.  Indeed, Alexion's false and misleading advertising has succeeded in deceiving doctors and patients and harmed Novartis by direct diversion of sales from Novartis to Alexion and a lessening of goodwill associated with Novartis and its FABHALTA® medication.

80.    Novartis has demanded that Alexion cease all such unfair competitive tactics in Novartis' March 17, 2025 and May 5, 2025 letters.

81.    As set forth above, Alexion's commercial advertising claims are causing immediate and irreparable competitive and commercial injury to Novartis and to its goodwill and reputation.

82.    Novartis is entitled to damages for Alexion's unfair competition, an accounting of profits made on Alexion's ULTOMIRIS®, and recovery of Novartis' costs of this action, in an amount to be determined at trial.

83.     Alexion knew or should have known that its conduct was reasonably likely to result in injury, damage, or other harm to Novartis, thus warranting the award of punitive damages.

84.     In addition, Novartis is suffering and will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law.  Specifically, harm to Novartis' business, reputation, and goodwill cannot be adequately compensated by monetary damages. Thus, Novartis is entitled to injunctive relief enjoining Alexion from further false and deceptive marketing statements.

**COUNT IV**
**Tortious Interference with Business Relations**

85.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

86.     There exists a protectable business relationship as between Novartis and its actual and prospective customers, including patients and healthcare professionals.

87.     Upon information and belief, Alexion knows and is aware of Novartis' protectable business relationships with actual and prospective prescribers and patients.

88.     As set forth above, Alexion knowingly, willfully, and intentionally utilized the "Block the Cause" campaign to make false and misleading statements about Alexion's ULTOMIRIS® and Novartis' FABHALTA®, in a manner calculated to prevent prospective patients and doctors from engaging with Novartis or otherwise to interfere with Novartis' relations with current and prospective patients and doctors, to Novartis' disadvantage.

89.     As set forth above, Alexion has also intentionally interfered with these protectable business relationships by verbally telling healthcare professionals false and misleading

26

information regarding the superiority of ULTOMIRIS® (as referenced in Paragraphs 6, 33, 35, 49, and 51).

90.     Novartis has suffered and will continue to suffer damages resulting from Alexion's false and misleading statements concerning FABHALTA®.

## COUNT V
## Trade Libel

91.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

92.     As set forth above, Alexion published false, misleading, and disparaging statements about Novartis' FABHALTA®, which created consumer confusion or misunderstanding and/or deceived or misled consumers regarding Novartis' medication.

93.     Alexion's false and/or misleading statements were intended to prevent or otherwise interfere with Novartis' relationships with others, namely, healthcare providers and patients. Alexion made the false and/or misleading statements above in order to deceive Novartis' customers, in the manner specified above, and thereby influence purchasing decisions and depress demand for Novartis' FABHALTA®.  The result of Alexion's false and/or misleading statements is fewer purchases of Novartis' FABHALTA® than would have occurred but for Alexion's disparagement and decreased sales, revenue, and market share for Novartis.

94.     Alexion's false and/or misleading statements were made to third persons (namely, healthcare providers) and played a material part in inducing those providers to reduce their dealings with Novartis, as described above.

95.     Alexion either knew that its statements were false and/or misleading or acted in reckless disregard of their truth or falsity.

96.     Alexion either knew or intended that its false and misleading statements would cause pecuniary loss and/or reasonably should have known that pecuniary loss would result from its false and misleading statements.

97.     As a direct and proximate result of Alexion's actions, Novartis has suffered and will continue to suffer harm, including in the form of lost profits and lost goodwill.

98.     Because Alexion's actions caused Novartis' losses, Novartis is entitled to recover the damages sustained by Novartis in an amount to be determined at trial, in addition to costs and fees as allowed by law.

99.     Unless permanently enjoined by the Court, Alexion's actions will continue to cause irreparable harm to Novartis for which there is no adequate remedy at law and, as a result, Novartis is entitled to permanent injunctive relief.

## DEMAND FOR JURY TRIAL

Novartis demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Alexion and pray for relief as follows:

(a)    That the Court find in favor of Novartis in accordance with all the Counts of Novartis' Complaint;

(b)    An award of damages against Alexion, in an amount to be determined, to fully compensate Novartis for all damages attributable to violations of 15 U.S.C. § 1125, and that such amount be enhanced;

(c)    An award of damages against Alexion, in an amount to be determined, to fully compensate Novartis for all damages attributable to violations of 6 Del. C. § 2532, and that such amount be trebled, in accordance with 6 Del. C. § 2533(c);

(d)    That the Court award compensatory and punitive damages to Novartis for Alexion's tortious interference and trade libel;

(e)    That the Court order an accounting of damages to Novartis arising from Alexion's wrongful conduct and award Novartis such amount;

(f)    That the Court enter an injunction that Alexion and its officers, employees, agents, servants, and representatives, and all those acting in concert with any of them:

(i)    Be permanently enjoined from publishing or otherwise disseminating to relevant consumers, prescribers, and/or the public any false or misleading statements concerning Novartis' FABHALTA® product, implying that FABHALTA® is less effective than ULTOMIRIS® and that proximal complement inhibitors are less effective than terminal C5 inhibitors, or otherwise engaging in false or misleading advertising concerning, or unfair competition with, those products;

(ii)    Be ordered to recall and destroy all physical brochures, advertisements, press releases, and other promotional materials that contain false or misleading statements concerning Novartis' FABHALTA® product, including without limitation those set forth in Exhibit A hereto; and

(iii)    Be ordered to issue corrective advertising retracting its false and misleading statements concerning Novartis' FABHALTA® product to all recipients of Defendant's advertising containing such statements and to post such retractions on its websites and social media account home pages for at least six (6) months.

(g)    An award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or 6 Del. C. § 2533;

(h)    That the Court enter judgment that this is an exceptional case under 15 U.S.C. § 1127 and/or 6 Del. C. § 2533; and

(i)    Such other and further relief, in law and in equity, to which Novartis may be justly entitled under the circumstances.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Daralyn Durie
Claudia Vetesi
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Mary Prendergast
Sarah Repko
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500

October 17, 2025

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiff*
*Novartis Pharmaceuticals Corporation*